### UNITED STATES ex rel. DEMAROIS v. FARRELL, United States Marshal.*
### No. 10626.

Circuit Court of Appeals, Eighth Circuit.
Feb. 8, 1937.

958

Neil Hughes and Alex Kanter, both of Minneapolis, Minn., for appellant.

George F. Sullivan, U. S, Atty., and George A. Heisey, .Asst. U. S. Atty., both of St. Paul, Minn., for appellee.

Before GARDNER, THOMAS, and FARIS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from an order of the District Court of Minnesota dismissing a writ of habeas corpus and remanding relator, appellant herein, to the custody of the United States Marshal in order that a hearing on revocation of probation previously granted to the petitioner and which was set for hearing December 11, 1935, might proceed.

The appellant having pleaded guilty in said District Court on the 2d day of June, 1928, to an indictment charging him with violating the National Motor Vehicle Theft Act (18 U.S.C.A. § 408), commonly referred to as the Dyer Act, was sentenced to serve five years in the penitentiary at Leavenworth, Kan., this being the maximum penalty under said act. On the same day an order was entered by the court suspending the sentence and putting the appellant on probation for five years pursuant to the provisions of the Act of March 4, 1925, sections 724 to 727, inclusive, 18 U.S.C. (18 U.S.C.A. §§ 724–727). The terms of both the probation and the sentence would, in due course, have expired on June 2, 1933. The probation order granted freedom from prison subject to the conditions that (1) appellant report during the period of probation at least once in every thirty days to the probation officer designated in the order, and that (2) "during said term of probation said defendant shall commit no crime punishable under the laws of the United States or any State, or Territory of the United States."

Thereafter the appellant failed to report, as required, to the probation officer and on December 1, 1928, the District Court was informed that appellant had violated the terms of his probation and that on September 6, 1928, had been convicted of the crime of burglary in the circuit court of Ashland county, Wis., and had been sentenced by that court to serve a term of one to ten years in the state prison at Waupun, to which prison he was committed on September 24, 1928. Thereupon,. without bringing the appellant before the court, without notice and without a hearing, the court entered an order revoking the probation and reinstating the sentence and providing that the sentence, so reinstated, should commence upon the release of the appellant from the Wisconsin state prison.

Pursuant to the order of December 1, 1928, a commitment was issued by the Dis-

trict Court of Minnesota directing the marshal to deliver appellant to the penitentiary at Leavenworth, Kan. The appellant was released from the penitentiary in Wisconsin on January 8, 1935, whereupon the marshal executed the commitment and delivered him to the warden of the penitentiary at Leavenworth on January 9, 1935.

On October 23, 1935, the appellant instituted a proceeding in habeas corpus in the District Court of the United States for the District of Kansas, seeking release from imprisonment at Leavenworth on the ground that the order of the District Court of Minnesota of December 1, 1928, revoking his probation had been entered without notice or hearing, and was void.

While the petition for writ of habeas corpus was pending in the District Court of Kansas, the district attorney in Minnesota filed a petition in the District Court of that state praying for the issuance of a warrant under the probation law for the arrest of appellant and that he be brought before the District Court of Minnesota for a hearing on the matter of the revocation of the order of probation entered on June 2, 1928. On November 4, 1935, a warrant was issued as prayed directing the marshal to arrest appellant and bring him before the court on December 11, 1935, for a hearing on the question of revocation. It is upon the authority of this warrant that the marshal, appellee herein, is now holding appellant, and under which he was held in custody when the instant proceeding in habeas corpus was commenced in which the order of December 10, 1935, was entered and from which this appeal was taken.

Upon the authority of Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566, it is conceded that the order of the District Court entered on December 1, 1928, revoking the probation was a nullity because the appellant was not given a hearing.

More than five years having expired after June 2, 1928, until the warrant for the arrest of the appellant was issued on November 4, 1935, it is claimed by the appellant that under the law the court had lost jurisdiction, and that its power and authority to cause the arrest of appellant and to revoke his probation had expired. On the other hand, the United States Attorney maintains that the time elapsing after the appellant violated his probation in September, 1928, until his release from the penitentiary in Wisconsin and his recommitment to the federal penitentiary at Leavenworth, Kan., in January, 1935, constituted no part of the probationary term because during that period the appellant was a fugitive from justice.

The probation, as well as the maximum sentence, was for five years. That period had barely commenced to run when appellant violated the conditions of the probation order by failing to report to the probation officer and by fleeing to a foreign jurisdiction in the state of Wisconsin and there committing an offense against the laws of that state for which he was incarcerated in the state penitentiary. This situation gives rise to the real question in this case, which is, When did the five-year period of probation expire? In other words, Was the period of probation tolled while appellant was confined in the penitentiary of Wisconsin outside the jurisdiction of the District Court of Minnesota and while he failed to comply with the conditions of the order of probation, or did the period expire at the end of five years from the date of the order without regard to appellant's wrongdoing?

If the period expired on June 2, 1933, as appellant maintains, without reference to the six and a half years of his confinement in the Wisconsin penitentiary, then the District Court of Minnesota was without power or authority on November 4, 1935, to issue a warrant for his arrest under the probation law. On the other hand, if lapse of time while he was in the state penitentiary is not considered, the court had not lost jurisdiction and the order appealed from should be affirmed.

The contention of the United States Attorney, as counsel for the marshal, is very persuasive upon this point. The analogy between the probation law and the parole law is both striking and complete. Both acts are intended, so far as the public interest will permit, to mitigate the penalties of the criminal law. The probation law applies to persons convicted of a crime and gives to the court a discretion which may be exercised before commitment. The parole law applies to persons convicted and committed to prison, and gives the parole board a discretion to be exercised after commitment. United States v. Murray, 275 U.S. 347, 358, 48 S.Ct. 136, 149, 72 L.Ed. 309.

As it relates to the jurisdiction of the District Court in the instant case, the

960

pertinent part of the probation law (Act of Mar. 4, 1925, c. 521, § 2, 43 Stat. 1260, section 725, 18 U.S.C., 18 U.S.C.A. § 725) is as follows:

"*At any time within the probation period* the probation officer may arrest the probationer wherever found, without a warrant, or the court which has granted the probation may issue a warrant for his arrest, which warrant may be executed by either the probation officer or the United States marshal of either the district in which the probationer was put upon probation or of any district in which the probationer shall be found and, if the probationer shall be so arrested in a district other than that in which he has been put upon probation, any of said officers may return probationer to the district out of which such warrant shall have been issued. Thereupon such probationer shall forthwith be taken before the court. At any time after the probation period, *but within the maximum period for which the defendant might originally have been sentenced,* the court may issue a warrant and cause the defendant to be arrested and brought before the court. Thereupon the court may revoke the probation or the suspension of sentence, and may impose any sentence which might originally have been imposed." (Italics supplied.)

The analogous section of the parole law (Act of June 25, 1910, c. 387, § 4, 36 Stat. 820, 18 U.S.C. § 717, 18 U.S.C.A. § 717) is as follows:

"If the warden of the prison or penitentiary from which said prisoner was paroled or said board of parole or any member thereof shall have reliable information that the prisoner has violated his parole, then said warden, *at any time within the term or terms of the prisoner's sentence,* may issue his warrant to any officer hereinafter authorized to execute the same, for the retaking of such prisoner."

Section 6 of the parole law (18 U.S.C. § 719, 18 U.S.C.A. § 719) further provides:

"If such order of parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence originally imposed; and *the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced.*"

Similarly section 725 of the probation law provides that when defendant, having been arrested, is brought before the court, "* * * the court may revoke the probation or the suspension of sentence, and may impose any sentence which might originally have been imposed."

█ It is a settled rule of criminal law in the courts of the United States that the statute of limitations does not run in favor of fugitives from justice. 18 U.S.C. § 583 (18 U.S.C.A. § 583); United States v. Dooley (D.C.E.D.N.Y.) 11 F.(2d) 428, 429; Ferebee v. United States (C.C.A.4) 295 F. 850; 16 C.J. 229.

█ A fugitive from justice is a person who having committed a crime in violation of the laws of the United States flees from the jurisdiction of the court where the crime was committed, Greene v. United States (C.C.A.5) 154 F. 401, 411, or departs from his usual place of abode and conceals himself within the district, Ferebee v. United States (C.C.A.4) 295 F. 850, 851; Porter v. United States (C.C.A. 5) 91 F. 494, 496. The term applies to any one fleeing from the justice of the United States, not the justice of any particular district. Brouse v. United States (C. C.A.1) 68 F.(2d) 294, 295. And, under the parole law, one who violates the conditions of his parole is held to have the status of an escaped convict and is a fugitive from justice. Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247.

█ Before pointing out the relation between the foregoing rules and the statutes under consideration, it should be observed that probation is "conferred as a privilege, and cannot be demanded as a right. It is a matter of favor, not of contract. There is no requirement that it must be granted on a specified showing. The defendant stands convicted; he faces punishment, and cannot insist on terms or strike a bargain." Burns v. United States, 287 U.S. 216, 220, 53 S.Ct. 154, 155, 77 L.Ed. 266.

As observed, supra, the probation statute (18 U.S.C. § 725 [18 U.S.C.A. § 725]) provides that "at any time *within* the probation period the probation officer may arrest the probationer, wherever found, without a warrant, or the court which has granted the probation may issue a warrant for" the arrest of the defendant, that he shall be taken before the court and his probation may be revoked.

The parole law (18 U.S.C. § 717 [18 U.S.C.A. § 717]) also provides that the warden of the penitentiary or the board of parole may issue a warrant for the arrest of a prisoner who has violated his parole "at any time *within* the term or terms of the prisoner's sentence."

Neither statute expressly provides that the period of probation nor the term of the prisoner's sentence as the case may be shall be extended on account of the breach of conditions of the probation or of parole. But in the case of Anderson v. Corall, 263 U.S. 193, 196, 44 S.Ct. 43, 44, 68 L.Ed. 247, the Supreme Court say that, "Mere lapse of time without imprisonment or other restraint contemplated by the [parole] law does not constitute service of sentence. Escape from prison interrupts service, and the time elapsing between escape and retaking will not be taken into account or allowed as a part of the term."

In the cited case Corall was paroled from the penitentiary at Leavenworth, Kan. He was retaken as a parole violator. He had while on parole gone to Chicago where he committed a crime for which he was convicted and sentenced to a term in the state penitentiary at Joliet. His claim was that the term for which he was sentenced to Leavenworth penitentiary having expired he could not be recommitted. But the court said, "Corall's violation of the parole, evidenced by the warden's warrant and his conviction, sentence to and confinement in the Joliet penitentiary, interrupted his service under the sentence here in question, and was in legal effect on the same plane as an escape from the custody and control of the warden." The reason stated by the court for this conclusion was, not that the statute so provided, but that "his status and rights were *analogous* to those of an escaped convict." That is, in brief, as a fugitive from justice, time elapsing while he was a parole violator serving time in a state penitentiary does not constitute a part of the term for which he was sentenced in the federal court.

The rule under the parole law was stated by the Fifth Circuit Court of Appeals in Platek v. Aderhold, 73 F.(2d) 173, 175, as follows:

"After breaking parole, until the prisoner is returned to the penitentiary, the running of his sentence is as much suspended as though he had escaped. He can be arrested and returned to finish serving it though the time may have passed at which but for parole it would have been completed."

This rule has been applied under the parole law in all cases which have come to our attention. Biddle v. Asher (C.C.A. 8) 295 F. 670; Stockton v. Massey (C.C.A. 4) 34 F.(2d) 96.

The same rule of construction should apply to the probation law; and by the same analogy it does. The two laws are complementary. Their general purposes are identical. The humane purpose of Congress, as expressed in section 3 of the parole law (18 U.S.C.A. § 716), is, "If it shall appear to said board of parole * * * that there is a reasonable probability that such applicant [prisoner] will live and remain at liberty without violating the laws, and if in the opinion of the board such release is not incompatible with the welfare of society, then said board of parole may in its discretion authorize the release of such applicant on parole," etc.

The probation law provides that "the courts of the United States * * * when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public, as well as the defendant, will be subserved thereby, shall have power * * * to place the defendant upon probation," etc. Section 1 (18 U.S.C.A. § 724).

 The purpose of the two laws being thus identical and their provisions analogous, corresponding provisions should be given the same construction. This is especially true in this instance for the further reason that any other construction would defeat the purpose of the law and would result in an absurdity. If the construction for which the appellant contends were the rule, then punishment in every case of probation may be avoided by escape from the custody of the probation officer and by remaining in a foreign jurisdiction or in concealment until the period of the probation and for which sentence might have been imposed expires. It is a settled rule that the courts should not so construe statutes as to attribute to the Legislature a construction which leads to absurd results. United States v. Anderson (C.C.A. 8) 76 F.(2d) 375, 378; Sorrells v. United States, 287 U.S. 435, 446, 53 S.Ct. 210, 214, 77 L.Ed. 413, 86 A.L.R. 249.

Again, if the act should be construed as appellant contends, "probation might be more reluctantly granted, or, when granted, might be made the occasion of delays and obstruction which would bring reproach upon the administration of justice." Burns v. United States, supra. Such a construction should not be adopted unless required by the plain terms of the statute, which is not the case here.

■ It follows that when the appellant in violation of the conditions of his probation escaped from the custody of the probation officer, committed the crime of burglary in the state of Wisconsin and was incarcerated in the penitentiary of that state for a term of approximately six and one half years the period of his probation was tolled. It was within the power of the District Court of Minnesota to issue the warrant under which appellant was held in custody by the marshal at the time of the hearing on the writ of habeas corpus; and the order appealed from should be affirmed, unless for some other reason reversal is required.

■ It is urged in argument that inasmuch as the District Court of Minnesota first acquired jurisdiction over the appellant under the indictment for violation of the Dyer Act (18 U.S.C.A. § 408) that court was entitled as against the state of Wisconsin to have its sentence first executed; and that when the federal court of Minnesota learned that appellant was imprisoned in Wisconsin it might have retaken him by habeas corpus or otherwise. The argument is that the federal court having failed to exercise its prerogative it can not now enforce its sentence. In support of this contention counsel cite Grant v. Guernsey (C.C.A. 10) 63 F.(2d) 163, certiorari denied 289 U.S. 744, 53 S.Ct. 688, 77 L.Ed. 1491, and Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879. There are three reasons why the rule invoked is not applicable here. First, the question is now moot because appellant failed, in so far as the record discloses, to raise the question in the Wisconsin court when arrested there. In this respect the Grant Case, supra, is not in point. Second, in the Ponzi Case the Supreme Court points out, 258 U.S. 254, at page 260, 42 S.Ct. 309, 310, 66 L.Ed. 607, 22 A.L.R. 879, that this is a matter of which the criminal may not complain. When a person has violated the criminal statutes of two different sovereigns, it is for the interested sovereigns and not the criminal to settle which shall first inflict punishment. United States ex rel. Moore v. Traeger (C.C.A. 9) 44 F.(2d) 312, 313. If the defendant's constitutional rights to trial by jury and full opportunity for defense are preserved in both jurisdictions, he cannot object to the order of procedure. In the instant case it would be a travesty to heed the complaint of the appellant, because he was a fugitive from the jurisdiction of the federal court of Minnesota when he committed the crime of burglary in Wisconsin. He was then concealing his whereabouts from the federal officers in Minnesota, and he should not be heard to complain because those officers permitted him to serve his sentence in the Wisconsin prison. He was given the same treatment accorded the defendant in the Corall Case, supra. In the third place, the government is not estopped by reason of its failure to take the custody of the appellant from the state of Wisconsin after the court in Minnesota learned of appellant's imprisonment there because appellant was not prejudiced in any of his constitutional rights thereby. The government is estopped in the enforcement of criminal laws only by some sound public policy, such as when its officers have induced or lured the defendant into the commission of a criminal act. Sorrells v. United States, 287 U.S. 435, 445, 448, 53 S.Ct. 210, 214, 215, 77 L.Ed. 413, 86 A.L.R. 249.

It is further insisted that the probation law of the United States was "borrowed" from state statutes, and that, therefore, "it must be assumed that Congress in passing the statute intended it should be construed in the same sense as it had been construed in the states from which it was borrowed." Decisions from the highest courts of some states having probation laws antedating the federal act are cited, which cases hold, it is claimed, that a court has no jurisdiction to revoke the suspension of sentence or the probation after expiration of the period of sentence or probation.

■ We are not called upon to decide whether or not Congress "borrowed" the federal probation law from state statutes. The history of the act is detailed in the opinion of the Supreme Court in United States v. Murray, supra. Even if it were copied from a state statute, it does not follow that the construction placed upon the state statute by the highest court of the state is under all circumstances binding upon the federal courts, however persuasive such decisions may be. It will be remembered that when the probation law was enacted by Congress it became a part of the federal system of criminal jurisprudence, and it must be construed so that it will harmonize with all parts of the system to which it now belongs. As observed above, the system includes the federal parole law to which the probation law is in-

timately related and in connection with which it must be consistently construed. As to the general sense of the federal probation law, the rule of construction urged by appellant may be conceded to prevail when not inconsistent with the federal system, United States v. Lecato (C.C.A. 2) 29 F.(2d) 694, 695, but the rule has no application here under the circumstances to which attention is directed above. When a statute is adopted from one jurisdiction into the jurisprudence of another, it will be construed so as to harmonize it with its new environment in preference to a rigid adherence to the interpretation given it in its original home; especially is this true when the construction given it in its original home would render it inconsistent with the system into which it has been adopted. Penn Bridge Co. v. City of New Orleans (C.C.A.5) 222 F. 737, 741. As to the rule that new enactments of the Legislature, whatever their origin may be, added to a' system of related general law indicative of a settled policy, are to be construed and applied consistently with the construction placed upon the related parts of the system, unless they clearly manifest a different purpose, see United States v. Jefferson Electric Co., 291 U.S. 386, 396, 54 S.Ct. 443, 446, 78 L.Ed. 859; United States v. Barnes, 222 U.S. 513, 520, 32 S.Ct. 117, 56 L.Ed. 291; United States v. Sweet, 245 U.S. 563, 572, 38 S.Ct. 193, 62 L.Ed. 473; Panama R. Co. v. Johnson, 264 U.S. 375, 384, 44 S.Ct. 391, 392, 68 L.Ed. 748; Moore v. Chesapeake & O. Ry. Co., 291 U.S. 205, 214, 54 S.Ct. 402, 405, 78 L.Ed. 755; United States v. One Package (C.C.A.2) 86 F.(2d) 737, 739.

It is further suggested that since under the decision of the Supreme Court in Escoe v. Zerbst, supra, the order of the District Court of Minnesota of December 1, 1928, revoking the probation was a nullity, the probation is still in effect, unless it had expired by lapse of time. If the probation is still in effect, it is said, then appellant must be discharged under the Escoe decision. This thought does not take account of the fact that the warrant under which appellant is now held was issued long after the order of December 1, 1928, was entered. The present proceeding was commenced in November, 1935, in recognition of the nullity of the first order of revocation. The present warrant is in strict compliance with the provision of the statute authorizing the judge to issue it, and it requires the appellant to be brought before the court for a hearing in compliance with the interpretation placed upon the statute by the Supreme Court in the Escoe Case.

The order appealed from should, therefore, be, and it is affirmed.